248 So.2d 187 (1971)
Jess YOHO, Petitioner,
v.
Joan B. LINDSLEY, a Single Woman, Respondent.
No. 71-100.
District Court of Appeal of Florida, Fourth District.
April 23, 1971.
Rehearing Denied June 8, 1971.
*188 Patrick N. Chidnese of Howell Kirby Montgomery D'Aiuto Dean & Hallowes, Fort Lauderdale, for petitioner.
Harold B. Probes, Jr., of Hallman, Meeker & Sanson, Boca Raton, for respondent.
MAGER, Judge.
Petitioner-defendant, Jess Yoho, seeks to review by certiorari an interlocutory order not otherwise reviewable by interlocutory appeal pursuant to F.A.R. 4.2, 32 F.S.A.
Respondent-plaintiff, Joan B. Lindsley, filed an action at law for damages against defendant alleging that as a result of defendant's negligence plaintiff suffered injuries in an automobile accident on or about June 8, 1968. Plaintiff's complaint specifically alleged physical and mental suffering claiming, among other things, that as a result of the accident "she has suffered and will continue to suffer both physically and mentally and she has suffered and will continue to suffer headaches * * *" and that "some of her personal injuries are permanent". Petitioner-defendant filed an answer denying negligence and asserting the affirmative defense of contributory negligence. Discovery proceedings were commenced by the parties; petitioner sought to take the deposition of one Dr. Raymond R. Killinger, Jr., the respondent's treating psychiatrist from June 17, 1967 to April 5, 1969. Petitioner asserts that Dr. Killinger, at the instruction of respondent's attorney, refused to allow counsel for petitioner to inspect or to have read into the deposition his records concerning his treatment of the respondent nor was Dr. Killinger permitted to answer any questions concerning respondent's mental condition on the date of the accident.
Petitioner filed a motion to compel discovery and respondent filed a motion for *189 protective order limiting the scope of examination. The trial court entered an order pursuant to F.S. section 90.242, F.S.A., concluding in part as follows:
"* * * Dr. Killinger shall answer all questions which are relevant to the subject matter of this action; if the Plaintiff objects on the grounds that the material sought after, which may be either in the doctor's records or personal knowledge, is irrelevant and privileged, Dr. Killinger shall state (1) the general nature of the subject matter involved (either in his records or personal knowledge) and (2) why, in his opinion, the subject matter sought after is not relevant, in order to assist the Court in later rulings on certified questions. Further, the Defendant shall be entitled to a personal examination of only those parts of Dr. Killinger's records concerning his treatment of the Plaintiff which are relevant to the subject matter of this action; Dr. Killinger shall not be required to read nor may the Defendant examine those parts of his records objected to by the Plaintiff and, in such event, Dr. Killinger shall state the general nature of such records and why it is not relevant, as set forth above." (Emphasis supplied.)
Petitioner suggests that the wording of the aforementioned order permits plaintiff's attorney and treating psychiatrist to determine a legal question, i.e. relevancy, without the court or counsel for defendant ever having had the opportunity to examine the actual records concerning the plaintiff's treatment.
Petitioner seeks review of this order asserting that petitioner will suffer irreparable harm by not being given the benefit of examining the actual records and being heard as to their relevancy and also by not being given the benefit of the court's ruling on the legal question of the relevancy of the actual records as opposed to only Dr. Killinger's statement of the general nature of the subject matter involved.
The decision of the Florida Supreme Court in Brooks v. Owens, Fla. 1957, 97 So.2d 693, discusses the circumstances under which interlocutory proceedings at law are reviewable by certiorari, as follows:
"This court will review an interlocutory order in law only under exceptional circumstances. Where it clearly appears that there is no full, adequate and complete remedy by appeal after final judgment available to the petitioner, this court will consider granting the writ, as where the lower court acts without and in excess of its jurisdiction, or the order does not conform to essential requirements of law and may cause material injury throughout subsequent proceedings for which the remedy by appeal will be inadequate. * * *"
We have carefully reviewed the order of the trial court in light of the Brooks decision and are of the opinion that the petitioner has failed to demonstrate that the order complained of does not conform to the essential requirements of law.
The order of the trial court was entered pursuant to F.S. section 90.242, F.S.A., which section creates a psychiatrist-patient privilege, and provides, in part, as follows:
"90.242 Psychiatrists as witnesses; non-disclosure of communications with patient
"(1) * * *
"(2) Except as hereinafter provided, in civil and criminal cases, in proceedings preliminary hereto, and in legislative and administrative proceedings, a patient or his authorized representative, has a privilege to refuse to disclose, and to prevent a witness from disclosing, communications between patient and psychiatrist, or between members of the patient's family and the psychiatrist, or records, relating to diagnosis or treatment of the patient's mental condition.

*190 "(3) There shall be no privilege for any relevant communications under this section:
(a) * * *
(b) In a criminal or civil proceeding in which the patient introduces his mental condition as an element of his claim or defense, or, after the patient's death, when said condition is introduced by any party claiming or defending through or as a beneficiary of the patient. Laws 1965, c. 65-404, § 1, eff. June 25, 1965."
The trial judge's order reflects a great concern for the rights of the respective parties and carefully endeavors to maintain the proper balance between facilitating the ascertainment of truth in connection with legal proceedings and avoiding unwarranted intrusions into the confidences of the psychiatrist-patient relationship. We do not read the trial court's order (as petitioner suggests) as delegating to the psychiatrist or respondent's attorney the judicial determination of what constitutes "relevant communications". On the contrary, this suggestion is clearly negated by the language of the order indicating "later rulings on certified questions" in the event that respondent objects to certain inquiries or inspections of matters not relevant to the proceedings. To assist the court in making these "later rulings" the court has required the psychiatrist to state "why, in his opinion, the subject matter sought after is not relevant". We do not deem this requirement to be unreasonable nor do we construe this language as delegating the determination of relevancy to the psychiatrist as this determination is solely a judicial question.
Moreover, since the entry of the order under appeal, no questions have been propounded and we can neither speculate as to what questions would be relevant nor assume that the trial court does not intend to pass upon the question of relevancy. The procedural and substantive determination of relevancy would be guided by the customary rules of practice applicable to discovery except as hereinafter noted.
The construction and interpretation of the psychiatrist-patient privilege under Section 90.242 is a matter of first impression in this state and for that reason we would make the following observations for the benefit of the parties and the trial court. One of the most exhaustive treatments dealing with the scope and extent of this privilege appears in the recent decision of the Supreme Court of California in In re Lifschutz, 1970, 2 Cal.3d 415, 85 Cal. Rptr. 829, 467 P.2d 557. The problem has also been discussed in a very recent annotation appearing in 21 A.L.R.3d 912-925. See also City of Portsmouth v. Cilumbrello, 1963, 204 Va. 11, 129 S.E.2d 31. The Supreme Court of California reflects upon the very delicate and sensitive relationship between the psychiatrist and his patient:
"`The psychiatric patient confides more utterly than anyone else in the world. He exposes to the therapist not only what his words directly express; he lays bare his entire self, his dreams, his fantasies, his sins, and his shame. Most patients who undergo psychotherapy know that this is what will be expected of them, and that they cannot get help except on that condition. * * * It would be too much to expect them to do so if they knew that all they say  and all that the psychiatrist learns from what they say  may be revealed to the whole world from a witness stand.'" (85 Cal. Rptr. p. 839, 467 P.2d p. 567)
The California court also recognizes that a patient's privacy may be the proper subject of inquiry:
"First, the courts have noted that the patient, in raising the issue of a specific ailment or condition in litigation, in effect dispenses with the confidentiality of that ailment and may no longer justifiably seek protection from the humiliation of its exposure. Second, the exception represents a judgment that, in all fairness, *191 a patient should not be permitted to establish a claim while simultaneously foreclosing inquiry into relevant matters. As we explained in City and County of San Francisco v. Superior Court, supra, 37 Cal.2d 227, 232, 231 P.2d 26, 28 (the Catton case), `The whole purpose of the [physician-patient] privilege is to preclude the humiliation of the patient that might follow disclosure of his ailments. When the patient himself discloses those ailments by bringing an action in which they are in issue, there is no longer any reason for the privilege. The patient-litigant exception precludes one who has placed in issue his physical condition from invoking the privilege on the ground that disclosure of his condition would cause him humiliation. He cannot have his cake and eat it too.'" (85 Cal. Rptr. p. 841, 467 P.2d p. 569)
However, this does not mean whenever a patient institutes a claim for any physical or mental suffering he invites an automatic inquiry and intrusion into all past communications which may have transpired with a psychiatrist. A balancing of the rights of the respective parties must occur in light of the privilege and the nature of the judicial proceedings. As we observed earlier the trial court must strive to maintain the proper balance between "facilitating the ascertainment of truth in connection with legal proceedings and avoiding unwarranted intrusions into the confidences of the psychiatrist-patient relationship." The key to unlocking the door to discovery and permitting this balanced entry is found in the two-word admonition in subsection (3) of Section 90.242, supra, i.e. "relevant communications". The determination of what constitutes relevant communications is by no means an easy task in this psychiatrist-patient area. The court in Lifschutz gives us some insight into this thorny question of "relevancy" as follows:
"The patient-litigant exception allows only a limited inquiry into the confidences of the psycho-therapist-patient relationship, compelling disclosure of only those matters directly relevant to the nature of the specific `emotional or mental' condition which the patient has voluntarily disclosed and tendered in his pleadings or in answer to discovery inquiries." (85 Cal. Rptr. p. 839, 467 P.2d p. 567)
"* * *
"* * * In previous physician-patient privilege cases the exception has been generally applied only to compel disclosure of medical treatment and communication concerning the very injury or impairment that was the subject matter of the litigation. There is certainly nothing to suggest that in the context of the more liberal psycho-therapist-patient privilege this exception should be given a broader reading. (Emphasis added.)
"If the provision had as broad an effect as is suggested by petitioner, it might effectively deter many psychotherapeutic patients from instituting any general claim for mental suffering and damage out of fear of opening up all past communications to discovery. This result would clearly be an intolerable and overbroad intrusion into the patient's privacy, not sufficiently limited to the legitimate state interest embodied in the provision and would create opportunities for harassment and blackmail. (85 Cal. Rptr. pp. 841-842, 467 P.2d pp. 569-570)
"* * *
"* * * Disclosure cannot be compelled with respect to other aspects of the patient-litigant's personality even though they may, in some sense, be `relevant' to the substantive issues of litigation. The patient thus is not obligated to sacrifice all privacy to seek redress for a specific mental or emotional injury; the scope of the inquiry permitted depends upon the nature of the injuries which the patient-litigant himself has brought before the court." (85 Cal. Rptr. p. 842, 467 P.2d p. 570)
*192 In the Lifschutz case one Housek filed a suit against one Arabian on June 3, 1968, for damages resulting from an alleged assault. Housek's complaint alleged that the assault caused him "physical injuries, pain, suffering and severe mental and emotional distress". Arabian deposed Housek who stated that he had received psychiatric treatment from Dr. Lifschutz over a six-month period approximately ten years earlier. Other than this admission there was no further comment concerning the nature or contents of any conversation with or treatment by Dr. Lifschutz. Arabian then subpoenaed for deposition Dr. Lifschutz and all of his medical records relating to the treatment of Housek. While Dr. Lifschutz appeared for the deposition he refused to produce any of the medical records and refused to answer any questions relating to the treatment of Housek, and subsequently was adjudged guilty of contempt and sought review of such adjudication to the Supreme Court of California. Although the conviction was affirmed for reasons not directly related to the case sub judice,[1] the court, in further commenting on the scope of inquiry as it related to the assault case, stated at footnote 21, on p. 842 of 85 Cal. Rptr., on p. 570 of 467 P.2d:
"Thus in the instant case, for example, defendant would not be authorized to undertake an examination of psychotherapeutic communications to determine if the plaintiff has ever exhibited aggressive tendencies or had other personal attributes that might be related to the assault. The plaintiff has not disclosed such elements of his mental condition merely by instituting an action for damages resulting from an assault and thus the exception of Section 1016 is not applicable. * * *"[2]
The burden rests upon the party seeking to depose the psychiatrist to show that the patient's "mental condition" has been introduced; such introduction is evidenced when the patient himself discloses those ailments by bringing an action in which they are in issue. If a patient objects to an inquiry into a communication between the patient and the psychiatrist the burden will rest upon the patient to submit some showing that a given confidential communication is not directly related to the issue he has tendered to the court so as to enable the trial court to pass upon his claim of irrelevancy. In this regard we would call the trial court's attention to the varying types of protective measures available to it, as discussed in the Lifschutz case, supra, in making the threshold determination of relevancy as well as in safeguarding those communications which are ultimately determined to be relevant. The measures discussed in the Lifschutz case may be helpful to the trial court in the disposition of those matters that may rise in the case sub judice.
*193 While we are satisfied that the order of the trial court conforms to the essential requirements of law, the petitioner is not precluded from applying to the trial court for the entry of an order permitting the conduct of an examination of the mental or physical condition of a party within the meaning of Rule 1.360, F.R.C.P., 30 F.S.A.
Accordingly, the petition for writ of certiorari is denied.
CROSS, C.J., and OWEN, J., concur.
NOTES
[1] The California court expressed serious doubt that the 10-year-old therapeutic treatment sought to be discovered from Dr. Lifschutz would be sufficiently relevant to a typical claim of "mental distress" to bring it within the exception of Section 1016. The court, however, was unable to determine from the state of the record whether plaintiff's mental or emotional distress was merely a normal distress experience as a result of physical assaults or whether it includes unusual or particularly serious ailments upon which a prior history may be directly relevant. Noting that no claim had as yet been made that the subpoenaed records were not directly relevant to the specific mental and emotional injuries for which plaintiff was claiming relief, Dr. Lifschutz had no right to refuse to produce the records nor could he refuse to answer whether he had any communications with his patient inasmuch as the patient had already disclosed that he had consulted Dr. Lifschutz.
[2] Section 1016 of the California Evidence Code provided in part "There is no privilege under this article as to a communication relevant to an issue concerning the mental or emotional condition of the patient if such issue has been tendered by:

(a) the patient * * *".