336 So.2d 654 (1976)
Thellie S. ROPER, Petitioner,
v.
James F. ROPER, Respondent.
No. 76-583.
District Court of Appeal of Florida, Fourth District.
July 30, 1976.
Rehearing Denied September 8, 1976.
*655 Jay M. Cohen, of Levine & Cohen, Orlando, for petitioner.
G. Bruce Hill, of Adams, Best & Sears, Orlando, for respondent.
ALDERMAN, Judge.
Petitioner, wife in a dissolution of marriage action, seeks relief by writ of certiorari from an order requiring her psychiatrist to testify at a discovery deposition.
The respondent-husband first contends that petition for writ of certiorari is not the correct procedure for obtaining relief from an adverse interlocutory order in a civil action formerly cognizable in equity. Technically this is correct. Dissolutions of marriage were formerly cognizable at equity; thus, under Rule 4.2 F.A.R., an interlocutory appeal is permissible and certiorari is consequently an inappropriate remedy. A writ of certiorari is normally available to obtain review only where no other method of appeal is available. DeGroot v. Sheffield, 95 So.2d 912 (Fla. 1957).
We have in the past held that improvidently filed petition for certiorari could not be treated as an appeal. Knight v. Edwards, 276 So.2d 499 (4th DCA Fla. 1973). However, the Supreme Court has subsequently held that an improvidently filed petition for certiorari may be treated as an appeal. The Supreme Court referring to Article V, Section 2(a) of the Florida Constitution,[1] stated:
"... The salutary purpose of the constitutional provision is to insure that improper or misconceived remedies which have been sought will not justify dismissal of causes or reviews where a proper remedy or review procedure is available, provided the review sought was timely brought." State v. Johnson, 306 So.2d 102 (Fla. 1974).
The remedy sought in this case was timely brought, has merit, and therefore should not be denied solely on the basis of an improvidently invoked remedy.
In the action below both parties alleged that they were fit and proper to have the care, custody and control of their minor children, while denying that their spouse was so suited. The husband attempted to depose the wife's psychiatrist. The wife instructed her psychiatrist not to testify, citing Fla. Stat. § 90.242 (1975).[2] The trial *656 judge ruled "... no privilege exists in this cause as to communications with or diagnosis or treatment of Thellie S. Roper (wife) insofar as her mental and emotional state relates to her fitness as a mother ..." The doctor was ordered to answer questions touching on those matters. It is from this order that petitioner seeks relief.
This court has previously considered the psychiatrist-patient privilege. Yoho v. Lindsley, 248 So.2d 187 (4th DCA Fla. 1971). We will not repeat the discussion contained in that case but will apply the principles there announced to the specific facts of this case.
The threshold question is whether or not the wife, by seeking child custody in a suit for dissolution of marriage, introduced her mental condition as an element of her claim or defense so as to waive the privilege for any relevant communications. Fla. Stat. § 90.242(3)(b) (1975). There is no doubt, in a child custody dispute, that the mental and physical health of the parents is a factor that the court can and should consider in determining the best interests of the child. Fla. Stat. § 61.13(3)(g) (1975). Green v. Green, 254 So.2d 860 (1st DCA Fla. 1971). However, we do not believe that simply by seeking custody of her children, wife has made her mental condition "an element of her claim or defense" thereby waiving her psychiatrist-patient privilege.
The wife's mental condition may become an issue in the case; and if so, relevant evidence concerning her mental condition may be presented at trial. Prior to trial, the husband has the benefit of Rule 1.360 R.C.P. Upon a proper motion and showing of good cause, the trial court can require the wife to submit to a compulsory pre-trial mental examination. Gordon v. Davis, 267 So.2d 874 (3rd DCA Fla. 1972).
The husband contends however that the testimony of his wife's treating psychiatrist would have more probative value than that of a court appointed psychiatrist. He questions whether a court-appointed psychiatrist would get the same cooperation from his wife that her personal psychiatrist received. This is not a valid point. Our courts, in both civil and criminal matters have long relied upon the testimony of court-appointed psychiatrists to determine a person's mental condition. For example: The Baker Act, Fla. Stat. Ch. 394, and Rules 3.210 and 3.740 R.Cr.P. As we stated in Yoho v. Lindsley, supra, 248 So.2d at 191, "... the trial court must strive to maintain the proper balance between `facilitating the ascertainment of truth in connection with legal proceedings and avoiding unwarranted intrusions into the confidences of the psychiatrist-patient relationship'."
A psychiatric patient confides in his or her psychiatrist with more candor than he or she would normally exhibit in other relationships. Successful therapy and treatment requires complete disclosure of the most personal thoughts and recollections. A treating psychiatrist who cannot assure his patient of confidentiality would be severely handicapped. The psychiatrist-patient privilege would be seriously compromised if a treating psychiatrist could be required to testify against his patient in any divorce proceeding where the issue of child custody was raised. If such were the law, no psychiatrist could ever assure his patient of confidentiality.
We recognize that in a child custody case the mental health of a parent may be a *657 relevant issue. Where this issue is raised the trial court must maintain a proper balance, determining on the one hand the mental health of the parents as this relates to the best interest of the child, and on the other maintaining confidentiality between a treating psychiatrist and his patient. The court in this case has an alternate tool which may accomplish both purposes. Upon proper motion the court may order a compulsory psychiatric examination.
The trial court would be faced with an entirely different situation if the wife should offer the testimony of her treating psychiatrist to prove her mental condition. In that event, the door would have been opened and the privilege waived. The husband on cross-examination could then inquire as to "any relevant communications" between his wife and her psychiatrist.
The trial court's order requiring wife's psychiatrist to give deposition testimony concerning communications with or diagnosis or treatment of wife, insofar as her mental and emotional state relates to her fitness as a mother, is reversed. The case is remanded for further proceedings consistent with this opinion.
WALDEN, J., concurs.
DOWNEY, J., dissents, with opinion.
DOWNEY, Judge (dissenting).
I agree with the majority that the inadvertent filing of a petition for certiorari in this case should be treated as an interlocutory appeal upon authority of State v. Johnson, 306 So.2d 102 (Fla. 1974), thus enabling this court to resolve the appellate issue presented.
However, it seems to me that when the appellant filed her counter petition alleging that she was a fit and proper person to have the custody of the two minor children of the parties and praying for custody, Section 61.13(3), Florida Statutes (1975), became applicable to this case. That statute mandates that in deciding custody the court shall determine the best interests of the children by evaluating all relevant factors, expressly including "the mental and physical health of the parents." Section 90.242, Florida Statutes (1975), which creates the psychiatrist-patient privilege involved herein expressly excludes the privilege from applying to any relevant communications in a civil proceeding in which the patient introduces his mental condition as an element of his or her claim or defense.
As the majority points out, a required psychiatric examination is available to the court pursuant to Fla.R.Civ.P. 1.360. This rule is frequently used when a party's mental condition comes into issue in custody matters. But can there be any real question that a prelitigation analysis and evaluation of a party by his psychiatrist will be much more informative and helpful to the court in determining the primary question in the litigation, viz., the best interests of the children? Thus, I believe the statute creating the privilege envisions that it could not be invoked in a case involving child custody.
The order appealed from does not purport to give the appellee unbridled license to explore appellant's entire psychiatric history; rather it rightly limits the inquiry to communications, diagnosis, and treatment insofar as appellant's mental and emotional state relates to her fitness as a mother.
Accordingly, feeling as I do that the trial court's order authorizing the taking of the deposition of appellant's psychiatrist under the facts of this case was correct, I would affirm that order.
NOTES
[1] Article V, Section 2(a), Florida Constitution: "The supreme court shall adopt rules for the practice and procedure in all courts including the time for seeking appellate review, the administrative supervision of all courts, the transfer to the court having jurisdiction of any proceeding when the jurisdiction of another court has been improvidently invoked, and a requirement that no cause shall be dismissed because an improper remedy has been sought ..."
[2] Fla. Stat. § 90.242: (1) As used herein "patient" means a person who, for the purpose of securing a diagnosis or treatment of his mental condition, consults a psychiatrist; "psychiatrist" means a person licensed to practice medicine who devotes a substantial portion of his time to the practice of psychiatry; "authorized representative" means a person empowered by the patient to assert the privilege granted hereunder and, until given permission by the patient to make disclosure, any person whose communications are made privileged in this section.

(2) Except as hereinafter provided, in civil and criminal cases, in proceedings preliminary thereto, and in legislative and administrative proceedings, a patient or his authorized representative, has a privilege to refuse to disclose, and to prevent a witness from disclosing, communications between patient and psychiatrist, or between members of the patient's family and the psychiatrist, or records, relating to diagnosis or treatment of the patient's mental condition.
(3) There shall be no privilege for any relevant communications under this section:
(a) If a judge finds that the patient, after having been informed that the communications would not be privileged, has made communications to a psychiatrist in the course of a psychiatric examination ordered by the court, provided that such communications shall be admissible only on issues involving the patient's mental condition;
(b) In a criminal or civil proceeding in which the patient introduces his mental condition as an element of his claim or defense, or after the patient's death, when said condition is introduced by any party claiming or defending through or as a beneficiary of the patient.