358 So.2d 610 (1978)
Mahmood MOHAMMAD, Appellant,
v.
Shala MOHAMMAD, Appellee.
No. EE-235.
District Court of Appeal of Florida, First District.
May 17, 1978.
Opinion Revised on Rehearing June 26, 1978.
*611 Jean Laramore, Tallahassee, for appellant.
J. Klein Wigginton, of McClure, Wigginton, Campbell & Owen, Tallahassee, for appellee.
BOYER, Judge.
By this appeal, the husband (appellant here) seeks review of several portions of a final judgment of dissolution of marriage.
The parties were married in Iran in 1965 after the husband had completed medical school and the wife had graduated from high school. At the time of their marriage, the parties entered into an antenuptial agreement fixing the property rights of both parties in the event of divorce. The parties moved to the United States and eventually in 1973 moved to Tallahassee where the husband commenced the practice of obstetrics and gynecology. The wife did not work during the marriage: However, she is currently attending college and is studying to become an x-ray technician.
The parties have two children, a daughter, age 4, and a son, age 11, the custody of whom the parties are litigating. The trial court ordered both parties to submit to a mental examination by a court appointed psychiatrist, who reported his findings and conclusions to the court. The husband moved to compel discovery of psychiatric reports relating to the mental condition of the wife. The trial judge granted the motion but refused the husband access to the records of the wife's psychiatrist, Dr. Wray.
The husband's income for 1974 was $74,053.00 and $120,636.00 for 1975. His projected income for 1976 was $153,666.96. He has a $10,000.00 interest in a joint land venture, joint interest with his wife in the marital home, a joint checking account with the wife for $5,000.00 a personal account of $2,500.00, and a corporate savings account of $30,000.00.
During the final hearing, several friends, neighbors, doctors and clinical psychologists testified on the issue of custody and both parties' fitness to have custody. Later, the court entered a final judgment awarding the wife custody of the children, child support, lump sum alimony, periodic alimony, a car, one-half of the parties' $5,000.00 savings account and attorneys fees.
The record on appeal reveals an amended petition for dissolution of marriage to which is attached as an exhibit an antenuptial agreement entitled "Marriage Contract Deed" entered into by the parties in Iran. In her answer appellee admitted the signing of the antenuptial agreement and admitted that a copy thereof was attached to the amended petition. Appellant's first assignment of error urges that the trial court erred in denying appellant the opportunity to present any evidence pertaining to said antenuptial agreement and in refusing to enforce same. The transcript of the testimony reveals the following:
"Direct Examination by Mrs. Laramore:
"Q. Dr. Mohammad, you entered into a marriage contract with your wife in another country, did you not?
"A. That's right.
"Q. And what were the terms of this marriage contract?
"The Court: That is wholly without my consideration, this antenuptial agreement that was entered into under the laws of another country. That is not going to have one bit of bearing whatever on what I intend to do.
"Mrs. Laramore: I'm sorry, Your Honor has not said that before. I did not know.

*612 "The Court: Well, I thought I made that plain earlier, that I wasn't going to be bound in this proceeding by any antenuptial agreement entered into under the laws of another country which was the tradition and culture of that country. I'm sorry if I didn't make that plain. I'll make it plain now.
"Mrs. Laramore: I'm sorry, I would not have asked.
"The Court: No, I thought I made myself plain on that. I read the antenuptial agreement. It's in the file I suspect somewhere."
Although the better practice would have been to have made a proffer of the antenuptial agreement or at least have it marked for identification, the allegations of the amended petition and answer established it as a fact and it is clear from the testimony that the attitude of the trial judge was such as to place a chilling effect upon any further attempts by appellant's counsel to have it considered.
The real issue presented by appellant's first point is whether or not a change in circumstances after a marriage vitiates an otherwise valid antenuptial agreement. However, because of the refusal of the trial judge to permit evidence relative to the circumstances of the parties at the time the antenuptial agreement was entered into or, indeed, any evidence at all relative to the antenuptial agreement, we are unable to reach that issue on appeal. It is obvious, though, that by virtue of the refusal of the trial court to admit the evidence appellant has been deprived of an opportunity to have the issue resolved. We, accordingly, reverse and direct that the appellant be afforded an opportunity to adduce evidence relative to the antenuptial agreement, the circumstances of the parties at the time the agreement was entered into, the circumstances of the parties at the time of the dissolution, and any other evidence relative to the antenuptial agreement, its validity and enforceability.
Another point which requires our consideration relates to the testimony (or sought testimony) of Dr. Wray. The record reveals that prior to the commencement of the dissolution action Mrs. Mohammad sought the services of Dr. Robert Wray, a psychiatrist. During the progress of the case, over the objection of Dr. Mohammad's attorney, the trial judge obtained copies of various reports made by Dr. Wray relative to Mrs. Mohammad but refused to admit them into evidence and refused to permit their inspection by the attorneys for the parties. Dr. Wray was not called as a witness at the final hearing because Mrs. Mohammad invoked her psychiatrist-patient privilege of confidentiality, which was sustained by the trial judge.
We are acquainted with no law nor rule of evidence which permits a trial judge in a dissolution proceeding, in the absence of agreement of the parties, to consider matters not in evidence and not available to the attorneys for the respective parties. As to the privilege, our sister court of the Third District in Critchlow v. Critchlow, 347 So.2d 453 (Fla. 3rd DCA 1977), considering a case factually similar to that sub judice, said:
"In addition, this case falls within the exception to the privileged communication between a psychiatrist and his (or her) patient as set out in Section 90.242(3)(b), Florida Statutes (1975):
"90.242 Psychiatrists as witnesses; nondisclosure of communications with patient
"(3) There shall be no privilege for any relevant communications under this section:
* * * * * *
"`(b) In a criminal or civil proceeding in which the patient introduces his mental condition as an element of his claim or defense, or, after the patient's death, when said condition is introduced by any party claiming or defending through or as a beneficiary of the patient. Laws 1965, c. 65-404, § 1, eff. June 25, 1965.'
"In her petition for dissolution of marriage, Cynthia alleges that she is a fit and proper person to have custody of Kelli. After her voluntary commitment to the hospital for mental treatment, John filed a motion for leave to amend his counterpetition *613 to reflect that Cynthia is not a fit and proper person to have custody because of her current emotional instability. At a hearing on this motion to amend, the issue of Cynthia's mental condition was injected into the proceedings and Cynthia's counsel (upon ore tenus motion) agreed to the appointment of a psychiatrist to examine her and John, and to render a professional opinion as to which party is best suited to have custody thereby introducing Cynthia's mental condition as an element of her claim for Kelli's custody.
"We also find that Roper v. Roper, 336 So.2d 654 (Fla. 4th DCA 1976) relied upon by Cynthia is not controlling because in the instant case, in contrast to Roper, Cynthia's mental health is a highly relevant issue.
"Further, in a dissolution of marriage proceeding where the issue of child custody is presented it is incumbent upon the chancellor to evaluate, among other crucial factors, the mental health of each of the parents in making a final custody determination which is in accord with the best interest of the minor child or children. See Section 61.13(3)(g), Florida Statutes (1975). In light of Cynthia's voluntary commitment for treatment of her mental condition, Cynthia's mental health is vital to a proper determination of permanent custody and, therefore, Section 90.242, Florida Statutes (1975) creating the patient-psychiatrist privilege cannot be invoked under the facts in this child custody case.
"Accordingly, the protective order appealed is reversed and the cause remanded to the trial court to enter an order authorizing John to take the depositions of Cynthia's treating physicians; but limiting the scope of those examinations to communications, diagnosis and treatments insofar as Cynthia's mental and emotional state relates to her fitness as a mother." (347 So.2d at pages 454-455)
While we agree with our sister court, under the facts of that case, that opinion is not dispositive of the case sub judice. F.S. 90.242(3)(b), excepts from the privilege communications between a psychiatrist and his patient in a criminal or civil proceeding in which the patient introduces his mental condition as an element of his claim or defense. Unlike the Critchlow case, appellee in the case sub judice did not introduce her mental condition as an element of her claim or defense. In Critchlow the wife alleged that she was a fit and proper person to have custody of the child. She thereafter was committed to a mental hospital for treatment. Thus, her mental condition became a highly relevant issue. In the case sub judice, appellee's mental condition was introduced by appellant as an element of his claim, and appellee's mere denial of appellant's allegations did not waive the statutory privilege. If such were the case, the privilege would be meaningless because a party could always inject such element into the case and thereby destroy the opposing party's statutory privilege.
Until such time as the issues relative to the enforceability of the antenuptial agreement have been resolved there is no occasion for us to address the other issues presented on this appeal relative to alimony.
Neither is there any occasion for our consideration of the issues relative to the requirement of child support beyond the age of 18 years, nor those issues relative to attorney's fees in the trial court, until such time as the issue of child custody is properly determined upon appropriate evidence. The record reveals that more than a year and a half has elapsed since the final hearing which gave rise to the final judgment here appealed. We recognize that circumstances may well have changed in that period of time. Further, on the state of the record before us it would be virtually impossible for the learned trial judge, wise and experienced though he be, to correct, nunc pro tune, the deficiencies noted by us in the proceedings without conducting a de novo hearing on the issue of child custody. The best interest of the children, not procedural niceties, is, of course, the pole star of custody proceedings. We accordingly reverse for a de novo hearing on the issue of *614 custody, at which hearing the parties may, if they so desire, introduce specific portions of the record of the prior hearing or "fresh" evidence, or both, subject, of course, to the application of the appropriate rules of evidence.
Appellee's motion for attorney's fees incident to this appeal is provisionally granted, to be fixed by the trial court in accordance with this court's opinion in Dresser v. Dresser, 350 So.2d 1152 (Fla. 1st DCA 1977).
AFFIRMED IN PART AND REVERSED IN PART and remanded for further proceedings consistent herewith.
McCORD, C.J., and MELVIN, J., concur.