POLEN, Judge,
dissenting.
I dissent. Geraldine Dubois appeals from the trial court’s order ratifying a general master’s report granting Andrew Du-bois’ motion for transfer of the primary residence of the couple’s two minor children to him. I would reverse and remand.
Pursuant to a settlement agreement incorporated by reference into the final judgment of dissolution, appellant was named primary residential parent of the couple’s two minor children, age six (6) years and four (4) years. Approximately one and one-half (IV2) years after the final judgment, appellee petitioned for modification of dissolution, seeking to be named primary residential parent. Appellant did not file an answer to the petition, nor was she represented by counsel during the hearing held before the general master.
During the hearing, appellee presented the testimony of Dr. William Ryan, a psychologist who was treating appellee for alcoholism. Dr. Ryan had counseled both children, and had seen appellant on five (5) occasions, originally for the purpose of marital counselling. He testified extensively as to appellant’s mental health, the great majority of his testimony based upon two tests, an MMPI and a Rorschach, conducted on appellant prior to the final judgment of dissolution. He testified that appellant had a borderline psychotic disorder, and that she had told him she felt she was an alcoholic. He also testified to statements that appellant’s sister and children had made to him, concerning the appellant’s use of alcohol.
Approximately half of the way through Dr. Ryan’s testimony, the following exchange occurred:
MRS. DUBOIS: Can I say something?
THE COURT: After he’s finished.
Direct examination of Dr. Ryan continued, and appellant declined the court’s invitation to cross-examine him. • The hearing concluded and was resumed some nineteen (19) days later, at which time appellant moved to strike Dr. Ryan’s testimony on the basis that she had never waived the psychologist-patient privilege. The general master reserved ruling on the motion and subsequently failed to rule.
*424 The general master’s report recommended that primary residential custody of the boys be transferred to appellee. The trial court ratified the general master’s report and modified the final judgment of dissolution.
Appellee maintained on appeal that appellant did not object to Dr. Ryan’s testimony, and therefore any error in admitting his testimony was waived. I am unable to determine from the majority’s per curiam affirmance whether the court agrees with this argument, or rather believes that the admission of Dr. Ryan’s testimony was proper. However, under the circumstances presented by this appeal, I would hold that appellant did not waive her right to appellate review of this issue. Appellant attempted to address the court during Dr. Ryan’s testimony, and was silenced. What more could be expected of appellant in order to preserve the right to appellate review of this issue? I agree that neither opposing counsel nor the court carries a burden to litigate for a pro se litigant. Nevertheless, the general master in this case would not have been stepping from her impartial role by asking appellant whether she wished to voice an objection, or whether she wished to make a statement. At this point, we can only speculate as to whether appellant was attempting to interpose the objection, however inartfully, which she would raise more specifically when the hearing resumed. I would hold that appellant adequately preserved this issue for appellate review.
I believe the admission of Dr. Ryan’s testimony regarding appellant’s mental health was error, especially in light of the fact that much of this testimony was based upon tests conducted prior to the final judgment of dissolution. Section 90.503, Florida Statutes (1989), provides that a person has a right to refuse to disclose certain confidential communications between himself and his psychotherapist. Until a showing has been made that a person’s mental condition is in issue, there is no waiver of this privilege. Cantor v. Toyota Motor Sales, USA, Inc., 546 So.2d 766 (Fla. 5th DCA 1989). Although the former husband alleged that the former wife was unable to care for the children, “[m]ere allegations that the custodial parent is mentally unstable are not sufficient to place the custodial parent’s mental health at issue and overcome the [psychotherapist-patient] privilege.” Peisach v. Antuna, 539 So.2d 544, 546 (Fla. 3d DCA 1989) (citing Roper v. Roper, 336 So.2d 654 (Fla. 4th DCA 1976)).[1] This is not a case where evidence indicates a mental infirmity that would have caused appellant’s mental health to be vital to a proper determination of permanent custody. See, e.g., Critchlow v. Critchlow, 347 So.2d 453 (Fla. 3d DCA 1977); Miraglia v. Miraglia, 462 So.2d 507 (Fla. 4th DCA 1984).
Also, the vast majority of Dr. Ryan’s testimony concerned two tests conducted on appellant before the final judgment of dissolution, for the purpose of marital counseling. It is well established that custody can only be modified upon a showing that there has been a substantial and material change in circumstances since the entry of the prior custody award, and that the best interests and welfare of the child will be provided by a change in custody. Peisach v. Antuna, 539 So.2d 544 (Fla. 3d DCA 1989). In satisfying the extraordinary burden carried by a parent seeking to modify a prior award of custody, “it is essential that the movant rely only on changes occurring after entry of the original final judgment of dissolution because that judgment is res judicata as to ‘all matters involved and known at the time of the [judgment].’ ” Zediker v. Zediker, 444 So.2d 1034, 1036 (Fla. 1st DCA 1984) (quoting Teta v. Teta, 297 So.2d 642 (Fla. 1st DCA 1974)). The vast majority of Dr. Ryan’s testimony was irrelevant to the issue before the court. Appellant’s motion to strike Dr. Ryan’s testimony should have been granted.
*425 Further, the report of the general master, as ratified by the trial court, contains clearly erroneous findings of fact, which are not supported by the record. The general master’s report states:
The wife testified that she had a disposable income of $2,025 per month and while living with her sister from November, 1989 until July, 1990 she was only responsible for the water bill and half of the telephone and yet she was unable to make any savings of funds nor gave an explanation as to how the funds were spent.
However, it was the general master who roughly estimated the wife’s monthly income, and at no point did appellant confirm the master’s estimate. Appellant was not given an opportunity to explain how she had spent her salary, or whether she had accumulated any savings.
The general master also found that the older child had not returned homework for as long as six weeks, “[h]ence he must attend summer school in order to be promoted.” However, the child’s teacher testified that he had failed to hand in his weekly homework papers on six occasions, he was being administratively promoted, and summer school was recommended, not mandatory.
The general master stated that the younger child’s teacher testified that he would not be promoted to the first grade. However, the record shows that the child was younger than the average child starting kindergarten, and that he was promoted to pre-first grade, a transitional grade for children in his position. The general master quotes the teacher as having said “ ‘he is not a happy child and there is sadness in his face.’ ” The teacher’s actual testimony was that although the child “was not really happy,” she could not say that he was totally unable to do his schoolwork.
There is no dispute regarding the fact that the Dubois children were absent twenty-eight (28) days out of a 180 day school year, were often tardy, and had some difficulty with their schoolwork. The question, however, is whether these facts amounted to a substantial change in circumstances since the dissolution of marriage, such that a change of custody would be in the best interests of the children. Peisach, 539 So.2d at 546. I do not believe so.
On the basis of the improperly admitted testimony of Dr. Ryan, and the clearly erroneous findings of fact in the general master's report, I would have reversed and remanded for a new hearing.

. I am aware of Judge Downey’s dissent in Roper, which suggests that a parent's mental condition is always in issue in any custody proceeding. While Judge Downey has concurred in the majority’s per curiam affirmance here, there is no majority opinion to offer such a rule of law at this time.