HERSEY, Judge.
By petition for writ of certiorari plaintiffs in a medical malpractice action seek relief from an order requiring production and in camera inspection of certain HRS investigation reports. The issue is whether a shield law, enacted in 1990, should be applied in this case. We hold that it does apply, grant the petition and quash the order pertaining to HRS records.
The underlying action is premised on alleged negligence which occurred in 1987 and which resulted in brain damage to a child. The circumstances of the child’s injury were investigated by HRS resulting in a conclusion of “unfounded reports” of child abuse in February 1988. An.amended complaint for malpractice was filed in 1990. In December 1991 one of the malpractice defendants, Dr. Franzblau, sought discovery of the HRS records. The trial court denied objections to this discovery and ordered production for an in camera inspection. The present petition ensued.
We digress for a moment to discuss an important procedural aspect of this and similar “cat-out-of-the-bag” discovery cases. By now the essential ingredients for a cognizable application for certiorari review are fairly well established and need not be further documented for consideration of the issue before us. One essential characteristic of an effective application for relief by way of certiorari is that the threatened “harm” cannot later be undone or, in other words, cannot be rectified upon plenary appeal. In that vein, it is sometimes suggested that an order requiring production for an in camera inspection cannot display the appropriate characteristic of permanent harm because a remedy is available if and when the trial court enters a further order (after in camera inspection) requiring dissemination of the protected matter to the appropriate party or parties. That argument is both attractive and logical. It is attractive because in some cases it may be assumed that no such order will issue; thus the offended parties’ rights will have been vindicated and the cause of judicial economy will have been served. It is at the same time logical because if dissemination is ordered, the offended party may obviously make application for appellate relief at that time. The real question remains, however: what is the precise issue involved and when does it become ripe for review.
The shield law at issue in this case essentially creates a privilege in that HRS investigations resulting in a conclusion that allegations of child abuse are based upon “unfounded reports” are not admissible in a private negligence and/or malpractice action. An in camera inspection of such records is neither necessary nor appropriate to determine whether a report is entitled to the protection of the statute. This is particularly true where no party contests the fact that the HRS investigation result *1211 ed in an “unfounded reports” conclusion, as in the present case. It follows that the purpose of the in camera inspection must relate to other legitimate lines of inquiry such as relevance, materiality and prejudice. To be contrasted with this after-the-fact in camera situation are those cases in which the very purpose of the in camera inspection is to determine whether or not the material is discoverable in the first instance, such as where the inquiry seeks to determine if material is work product or not. In those cases certiorari review must await the court’s determination that the material is not to be protected.
We also exclude from our consideration the similar issue that arises in a criminal law context. See, e.g., Department of Health & Rehabilitative Servs. v. Lopez, 604 So.2d 2, (Fla. 4th DCA), reh’g en banc denied (1992).
From the foregoing we conclude that, in a civil setting, and with the exceptions noted, the issue of the applicability of the shield law vel non is put to rest by the order requiring production, whether for in camera inspection or for immediate dissemination. Thus certiorari will lie to correct an inappropriate determination in this discovery scenerio.
Section 415.51, Florida Statutes (1987), provided in subsection (2)(e) that a court by subpoena may find that access to child abuse records may be necessary for the determination of an issue before the court. Section 415.51(2)(f), Florida Statutes (Supp. 1988), contained a similar provision, allowing access to child abuse records upon subpoena. No exception was made for “unfounded reports.” The statute in effect in 1989 similarly contained a provision in section 415.51(2)(f), allowing in camera review by the court upon subpoena, and public disclosure if necessary for the resolution of an issue pending before the court.
The critical change in the statute took place effective June 11, 1990. See Ch. 90-50, § 10, Laws of Fla. Section 415.51(2) was amended to include a specific statement that access to “unfounded reports” would be limited to the persons identified and for the purposes stated in subsection (2), sub-paragraphs (a), (b), (c), (g), and (i). This excluded the provision permitting access to a court upon subpoena after a finding that such records would be necessary for a determination of an issue before the court. The persons identified in sub-paragraphs (a), (b), (c), (g), and (l) are HRS agents, the state attorney, law enforcement agencies, and the like. They do not include parties such as defendants in medical malpractice litigation, the requesting parties here.
Thus the question becomes whether the 1990 amendment to section 415.51 applies, when the medical treatment, alleged child abuse, and completion of the HRS report all took place before its effective date. The only events which occurred after the effective date of this amended statute were the filing of the lawsuit and the request for the child abuse reports. Respondent doctors argue as they did in the trial court that the act which triggers application of the statute is the preparation and completion of the “unfounded report,” which came about prior to the 1990 amendment which limited their dissemination.
Respondents’ arguments include a reference to the principle that a statute is presumed to apply prospectively, such that it will only apply to underlying conduct occurring after the statute becomes effective. See Fogg v. Southeast Bank, N.A., 473 So.2d 1352 (Fla. 4th DCA 1985); see generally, State v. Lavazzoli, 434 So.2d 321 (Fla. 1983). Respondents further argue that the conduct which the statute in question refers to is any alleged acts of child abuse and resulting HRS child abuse reports, rather than the subsequent request for HRS reports in a malpractice action.
Respondents also argue that the 1990 version of section 415.51 cannot be applied retroactively since the statute involves a matter of substantive law. They cite case law for the proposition that a request for public records has been found to involve matters of substantive law. See e.g. Coleman v. Austin, 521 So.2d 247 (Fla. 1st DCA 1988) (Public Records Act). As the substantive law endorses the right of privacy or confidentiality of a child abuse inves *1212 tigation report, respondents argue that a subsequent amendment to the statute cannot be applied retroactively to interfere with or diminish that substantive right.
Alternatively, respondents argue that section 119.07 of the Florida Public Records Act allows discovery of the HRS records. In particular, section 119.07(7)(a) provides that any person may petition the court for an order making public the HRS records pertaining to alleged child abuse; and if the court should determine a good cause exists for public access, they may be disseminated accordingly. However, respondents point to no provision in this statute or any case law which suggests that this statute could somehow override the separate and express protections for “unfounded reports” established in the 1990 version of section 415.51, Florida Statutes (Supp.1990).
Next, respondents contend that by bringing the medical malpractice action, petitioners waived the right to claim the statutory privilege in section 415.51, Florida Statutes (Supp.1990). They cite case authority holding that when one brings a medical malpractice suit, one’s medical history becomes the subject matter of the suit and any claim to privilege under the law is waived. One example of respondents’ case authority is Yoho v. Lindsley, 248 So.2d 187 (Fla. 4th DCA 1971). However, respondents’ reliance on this authority is clearly misplaced. The right of confidentiality asserted here does not pertain to the plaintiffs’ medical history per se, and should not be read to mean that the statutorily enacted protection of confidentiality for “unfounded reports” of child abuse is waived whenever a party brings a malpractice action.
We are not persuaded by these arguments. As petitioners correctly point out, regardless of whether the statute is procedural or substantive in nature, if the statute is remedial it must be applied retrospectively to serve its intended purpose. See City of Orlando v. Desjardins, 493 So.2d 1027, 1028-29 (Fla. 1986). Petitioners contend that the 1990 amendment to the confidentiality statute is remedial in that it protects the privacy of those wrongly accused of child abuse, yet encourages the reporting of such suspected instances of abuse and prevents a party from coloring his opponent with the stigma of mere investigation of child abuse even though the investigation results in an “unfounded report.”
Petitioners also correctly argue that the event which triggered the confidentiality statute in this case was not the accrual of the malpractice cause of action or the filing of the lawsuit, but rather it was the actual discovery requests, citing Hemmerle v. Bramalea, Inc., 547 So.2d 203 (Fla. 4th DCA 1989), rev. denied, 558 So.2d 18 (Fla.), cert. denied, 496 U.S. 926, 110 S.Ct. 2620, 110 L.Ed.2d 641 (1990). In that case, this court determined that the Florida Offer of Settlement statute was substantive in nature and therefore could not be applied retrospectively. The event triggering the remedy provided in that statute was said to be the making of the offer of settlement, not the accrual of the underlying cause of action or commencement of the litigation.' Since the offer of settlement had been made after the statute became effective, the statute was held to be applicable.
We therefore hold that the statute applies under the circumstances present in this case. We grant the writ and quash the order under review.
We further determine that the portion of the order requiring production of certain Davie Police Department records has been rendered moot by the fact that those records have already been disseminated to counsel.
CERTIORARI GRANTED; ORDER QUASHED.
LETTS and DELL, JJ., concur.